TEXTO COMPLETO DE LA SENTENCIA
Comparecen los recurrentes de epígrafe y solicitan que revoquemos la resolución emitida por la Administración de Reglamentos y Permisos (ARPE) el 13 de agostó de 2007. Mediante dicha resolución, ARPE aprobó un anteproyecto sometido por la Sociedad Especial Villa Doncella para la construcción de un condominio en un solar del sector Punta Las Marías en el Municipio de San Juan, y reactivó el permiso de construcción.
Analizados los recursos presentados, así como sus respectivos apéndices, resolvemos revocar la resolución recurrida.
*592 I
La Sociedad Especial Villa Doncella (Villa Doncella o la recurrida) solicitó a ARPE un permiso para la construcción del Condominio Dalí en el sector Punta Las Marías en San Juan. ARPE concedió dicho permiso sin permitir la intervención solicitada por los recurrentes y sin haber celebrado vista alguna. Ante esta actuación de la agencia, el recurrente señor Miguel Rodríguez Marxuach (señor Rodríguez Marxuach) presentó ante este tribunal los recursos de revisión KLRA-2005-00532 y KLRA-2005-00603, los cuales fueron consolidados. Un panel hermano de este tribunal emitió Sentencia el 10 de marzo de 2006 en la que determinó que ARPE había errado al no permitir la intervención de los recurrentes y al otorgar el permiso sin conceder una vista. Según determinó este Tribunal en esa ocasión, la vista era necesaria para que ARPE pudiera recibir prueba sobre la aplicabilidad del distrito RD-2 en el solar objeto de la controversia.
Así las cosas, ARPE celebró una vista los días 1 y 20 de marzo, y 18 de abril de 2007. Durante esta vista, se ordenó a los recurrentes, quienes intervinieron para oponerse al permiso y a la construcción del edificio, a presentar prueba sobre la inaplicabilidad del distrito RD-2 al sector Punta Las Marías. Luego de oponerse, el señor Rodríguez Marxuach presentó los testimonios del Ingeniero, Ramón Maíz del Toro y de la Arquitecta Lina Dueño, quienes explicaron las razones por las que no se podía aplicar el distrito RD-2 al solar donde ubica el proyecto. [1] El Oficial Examinador que presidió la vista determinó que la prueba presentada por el recurrente no demostró que no aplicara la clasificación del distrito RD-2, por lo que recomendó la autorización del anteproyecto y la reactivación del permiso de construcción que había sido suspendido anteriormente, y así lo ordenó ARPE en la resolución recurrida.
Inconforme con la determinación de la agencia, el señor Rodríguez Marxuach presentó su recurso de revisión judicial, KLRA-2007-00930, el 7 de septiembre de 2007. De igual manera actuaron los recurrentes, señora Carmen Sánchez Vda. de Pavía y el señor Danilo Eboli Martínez al presentar el recurso KLRA-2007-00937 el 11 de septiembre de 2007. Finalmente, el 12 de septiembre de 2007, los recurrentes, señora, Ivette Chaar Dávila y Defensores Area Costera, Inc. (DAC) presentaron su propio recurso, KLRA-2007-00942. Por cuestionar todos la misma resolución de ARPE y existir señalamientos de error relacionados, decidimos consolidarlos.
Los señalamientos de error que hace el señor Rodríguez Marxuach van dirigidos a cuestionar las actuaciones de ARPE al conceder el permiso de anteproyecto a la recurrida, Villa Doncella, específicamente al alegar que ARPE: (1) ignoró lo ordenado por la sentencia emitida por este tribunal el 10 de marzo de 2006 al imponerle el peso de la prueba al recurrente durante la vista; (2) ignoró lo que ordenó este tribunal al determinar que los distritos RD-2 aplican automáticamente y no consideró la prueba pericial que demostró que no se cumplen los requisitos para aplicar tal zonificación; (3) emitió una resolución que no se basa en la evidencia en el expediente y que no podía emitir al requerir el proyecto variaciones que la desarrolladora no había solicitado; y (4) erró al aplicar el Plan de Ordenación Territorial al sector de Punta Las Marías en contravención a la jurisprudencia reciente del Tribunal Supremo de Puerto Rico y las reglas de prelación.
Por su parte, los recurrentes, señora Sánchez Vda. de Pavía y el señor Eboli Martínez plantean que ARPE erró (1) al resolver a tenor del Reglamento de Ordenación Territorial del Municipio de San Juan; (2) al invertir el peso de la prueba durante la vista; y (3) al resolver como lo hizo, sin considerar que se requerían variaciones a los planos que los desarrolladores no solicitaron.
Finalmente, los recurrentes, señora Chaar Dávila y DAC, basaron sus señalamientos de error en la alegada nulidad del Reglamento de Ordenación Territorial del Municipio de San Juan. Indicaron que éste era nulo ab initio por las siguientes razones: (1) se violó la Ley Sobre Política Pública Ambiental [2] al no haber una Declaración de Impacto Ambiental (DIA); (2) se violó el debido proceso de ley constitucional y estatutario al no proveer una participación pública real y efectiva; (3) no se realizó un aviso público según requiere la reglamentación de la Junta de Planificación; (4) se violó la Ley de Municipios Autónomos [3] y la Ley de Procedimiento Administrativo Uniforme [4] (LPAU); (5) no se radicó en el Departamento de Estado la versión *593 aprobada por la Asamblea Municipal y la Junta de Planificación; (6) se violó la ley municipal y el reglamento de la Junta de Planificación mediante el Programa de Transferencias de Derechos de Desarrollo; y (7) se violó el debido proceso de ley constitucional y estatutario porque no se notificó al público sobre el Programa de Transferencias de Derechos de Desarrollo.
II
A
La Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico, Ley Núm. 81 del 30 de agosto de 1991, según enmendada, 23 LPRA sees. 4001 a 4958, se creó para brindar mayor independencia y autonomía a los municipios, mejorando así las operaciones, administración y desarrollo tanto de los municipios como del gobierno central. Esta ley confiere expresamente a los municipios el poder de adoptar y aprobar las medidas que estimen necesarias para mejorar su funcionamiento, siempre que sean compatibles con la política pública del gobierno central. El Artículo 1.005 de la ley expresa que “[e]l municipio es la entidad jurídica de gobierno local, subordinada a la Constitución del Estado Libre Asociado de Puerto Rico y a sus leyes, cuya finalidad es el bien común local y, dentro de éste y en forma primordial, la atención de asuntos, problemas y necesidades colectivas de sus habitantes”. 21 LPRA see. 4003.
A la luz de las disposiciones generales de la ley, los artículos 13.004 a 13.0012 autorizan a los municipios a adoptar los planos de ordenación que entiendan necesarios para proteger los suelos y fomentar el uso y desarrollo adecuado de los terrenos bajo su jurisdicción. 21 LPRA sees. 4602 a 4610. Los municipios que decidan adoptar sus propios planos y reglamentos de ordenación deberán seguir el procedimiento expuesto en las secciones antes mencionadas.
El Plan Territorial es el plan de ordenación que abarca toda la extensión territorial del municipio, enuncia y dispone la política pública sobre su desarrollo y sobre el uso de su suelo. 21 LPRA see. 4601 (s). Estos planes de ordenación tienen como propósito proteger los suelos, promover el uso balanceado, provechoso y eficaz de los mismos, propiciando el desarrollo cabal de cada municipio. 21 LPRA see. 4602.
Una vez el Plan Territorial entre en vigor, toda decisión sobre el uso del suelo se hará de conformidad con el mismo. En el suelo urbano, el Plan Territorial cumplirá, entre otros, con lo siguiente: proveer para subsanar deficiencias del desarrollo existente, propiciar el intercambio social y las transacciones económicas, promover el uso eficiente del suelo y conservar el patrimonio cultural. 21 LPRA see. 4603.
Asimismo, la Reglamentación del Plan Territorial contendrá los reglamentos y planos de ordenación y otras determinaciones de ordenación territorial, con señalamientos de uso, niveles de intensidad y características de las estructuras y del espacio público. Dicha Reglamentación se “hará específica para el suelo urbano, urbanizable y rústico, y podrán incorporar normas vigentes de la Junta de Planificación o de la Administración de Reglamentos y Permisos. Las disposiciones sustantivas y procesales de las nuevas competencias para viabilizar la ordenación territorial que se utilicen en los Planes de Ordenación formarán parte de los Reglamentos y Planos de Ordenación”. 21 LPRA see. 4603.
Cabe destacar que los planes de ordenación son elaborados y revisados por los municipios en estrecha coordinación con la Junta de Planificación y con otras agencias públicas concernidas para asegurar su compatibilidad con planes estatales, regionales y de otros municipios. Dicha elaboración o revisión deberá seguir un proceso intenso.de participación ciudadana mediante vistas públicas según dispone la Ley Núm. 81, supra. 21 LPRA see. 4606.
En el caso particular del Municipio de San Juan, el 25 de febrero de 2002, la Legislatura Municipal aprobó el Proyecto de Ordenanza Número 84, serie 2001-2002, para aprobar el Plan de Ordenación Territorial del *594 Municipio de San Juan. Éste fue aprobado finalmente mediante la Ordenanza Núm. 73, serie 2001-2002, el 26 de febrero de 2002. El 9 de octubre de 2002 fue adoptado por la Junta de Planificación mediante la resolución JP-PT-18-1. Finalmente, fue aprobado por la entonces Gobernadora, Hon. Sila M. Calderón, mediante orden ejecutiva de 13 de marzo de 2003, Boletín Administrativo, Núm. OE-2003-16. Simultáneamente con la aprobación del Plan de Ordenación Territorial, entró en vigor el Reglamento de Ordenación Territorial del Municipio de San Juan (el Reglamento de Ordenación). Éste fue adoptado al amparo de las disposiciones de la Ley Orgánica de la Junta de Planificación, Ley Núm. 75 del 24 de junio de 1975, según enmendada, 23 LPRA sees. 62 a 63j, y la Ley Orgánica de ARPE, Ley Núm. 76 del 24 de junio de 1975, según enmendada, 23 LPRA secs. 71 a 72i. Además, al amparo de la Ley de Procedimiento Administrativo Uniforme (LPAU), Ley Núm. 170 del 12 de agosto de 1988, según enmendada, 3 LPRA sees. 2101 a 2201, y de la Ley de Municipios Autónomos, supra. Sección 1.02 del Reglamento de Ordenación.
Entre los propósitos perseguidos por dicho Reglamento, se encuentran: establecer las normas para guiar y controlar el uso, desarrollo y redesarrollo de los suelos; promover el desarrollo ordenado, racional e integral del territorio; proteger, defender y conservar sus componentes naturales, incluyendo áreas verdes, áreas de recreación y zonas o sitios de interés histórico, arquitectónico, cultural, turístico, simbólico o arqueológico; revitalizar, rehabilitar y repoblar los centros y distritos urbanos tradicionales; redesarrollar sectores estratégicos del territorio municipal y promover el desarrollo integral de todas las áreas periferales de la ciudad. Sección 1.03. También, busca establecer la más estrecha coordinación entre el desarrollador y las entidades responsables de la infraestructura necesaria para el uso propuesto, desde las etapas más tempranas de la tramitación que regirán la autorización de notificaciones y urbanizaciones para asegurar que el proyecto internalice aquellos costos de la provisión de infraestructura inherentes a su funcionamiento sin afectar la calidad o cantidad de servicio disponible a la comunidad o sector.
Según se expresa en la sección de definiciones contenida en el Apéndice I del Reglamento de Ordenación, un Distrito Sobrepuesto es un:

“Distrito de Ordenación que se ubica sobre otro distrito de ordenación, con el propósito de viabilizar los objetivos y políticas públicas enunciadas en el Plan de Ordenación Territorial, particularmente las relacionadas con la revitalización, rehabilitación, repoblación y redesarrollo de los centros y distritos urbanos, o de permitir y reglamentar ciertos usos de alta densidad definidos en un área particular, sin afectar el derecho de desarrollo adquirido, y cuya reglamentación prevalece sobre la del segundo. Apéndice I (137) del Reglamento de Ordenación. ”

La Sección 10.01 sobre Distritos Sobrepuestos dispone los tipos de distritos: Distrito de Redesarrollo (RD), que se compone del RD-1 o Área Urbana Central o Corredores Urbanos; el RD-2 o Área Urbana Adyacente; RD-3 o Área Urbana Periferal; el Distrito del Tren Urbano (DTU); el Distrito Residencial-Comercial de Bordes (RGB); y el Distrito Zona Escolar (ZE).
El propósito de estos distritos es viabilizar los objetivos y políticas públicas enunciadas en el Plan de Ordenación, particularmente las relacionadas con la revitalización, rehabilitación, repoblación y redesarrollo en todo el suelo urbano de dicho municipio. Además, tiene la misión de viabilizar la conservación de los suelos especialmente protegidos y estimular la inversión privada en dichas áreas, compartiendo las cargas y beneficios del desarrollo entre el sector privado y el público. Se persigue fomentar la intensificación de usos y consolidación en las áreas urbanas, promoviendo un uso eficiente del suelo, de la infraestructura existente y futura, y de los servicios e instalaciones públicas. Sección 10.02 del Reglamento de Ordenación.
En esta sección sobre Distritos Sobrepuestos, igualmente se aclara que éstos prevalecerán sobre cualquier otra norma o instrumento de la planificación aplicable. Sección 10.03 del Reglamento de Ordenación.
*595 Respecto a un distrito de redesarrollo, específicamente se indica en el Reglamento de Ordenación que son establecidos con el propósito de recuperar la ciudad, su espacio público, lograr una mayor accesibilidad peatonal y vehicular complementaria a los sistemas de transporte público, favorecer un aumento en densidad poblacional, alturas, área bruta de piso así como de construcción, y crear un ambiente urbano con vitalidad y dinamismo socioeconómico y la seguridad necesaria para sus habitantes. Sección 10.04a del Reglamento de Ordenación.
En cuanto a la aplicabilidad de estos distritos, la Sección 10.04b establece que:

“Excepto en el caso de los sitios y zonas históricas designadas y/o potenciales, y de todos los recursos naturales, ecológicos, espacios verdes, espacios públicos identificados por el POT [Plan de Ordenación Territorial], a los que aplican disposiciones de los Planes Especiales, los Distritos de Redesarrollo aplican a todo el suelo urbano de San Juan, como Zona de Redesarrollo, desglosada como Area Urbana Central o Corredores Urbanos (RD-1), Area Urbana Adyacente (RD-2) y Area Urbana Periferal (RD-3) conforme a los siguientes criterios:

1. Cuando el área, sector o bloque desarrollado ha sido diseñado para un uso distinto a lo que prevalece en la actualidad.

2. Cuando el área, sector o bloque desarrollado ha sido transformado de tal magnitud que causa deterioro social, económico, ambientalista y físico; afecta el funcionamiento urbano, de salud pública y calidad de vida.

3. Cuando la población residente del área, sector o bloque desarrollado haya sido desplazada, emigrada o realojada masivamente por el deterioro sistemático del espacio público o privado.

4. Cuando el área, sector o bloque desarrollado está subutilizado, no responde no corresponde [sic] a las políticas públicas de un desarrollo sustentable, promovido por la Ley de Municipios Autónomos y los objetivos y políticas del Plan de Ordenación Territorial del Municipio de San Juan.

5. Cuando el área, sector o bloque desarrollado obedece o resulta ser una segregación social o auspicia desintegrar a las estratificaciones sociales, en contraposición de la integración y diversificación social, como base de la vida urbana de la ciudad.

6. Cuando los proyectos queden frente a un cuerpo de agua y colinden con la Zona Histórica del Viejo San Juan, se deberá evitar al máximo la obstaculización de lo visual tomando en consideración los rasgos topográficos, rasgos naturales, formas de las costas y un balance natural sobre el desarrollo y vitalidad económica.

7. Cuando se discuta sobre la altura de todo edificio, la misma deberá mantener una proporcionalidad con la altura de los edificios históricos de la zona; además se recomienda la disposición de las estructuras deforma perpendicular a la línea de costa y no deforma paralela (horizontal). ”
B
Es norma reconocida que a toda determinación administrativa le cobija una presunción de regularidad y corrección. Tal y como lo ha interpretado el Tribunal Supremo de Puerto Rico en numerosas ocasiones, la revisión judicial de este tipo de decisiones se circunscribe a determinar si la actuación de la agencia es arbitraria, ilegal, o tan irrazonable que la misma constituye un abuso de discreción. Otero v. Toyota, 163 DPR 716 (2005); Pacheco v. Estancias, 160 DPR 409 (2003); ELA et als. v. Malavé, 157 DPR 586 (2002); Mun. de San Juan v. JCA, 149 DPR 263 (1999); Franco v. Depto de Educación, 148 DPR 703, 709 (1999). Ello, debido a que los tribunales deben dar deferencia a las determinaciones de las agencias sobre asuntos que se encuentren dentro del área de especialidad de éstas. Rivera Concepción v. ARPE, 152 DPR 116, (2000); Fac. C. Soc. Aplicadas, Inc. v. *596 CES, 133 DPR 521 (1993); Asoc. Drs. Med. Cui. Salud v. Morales, 132 DPR 567 (1993).
Al enfrentarse a una petición para revisar judicialmente una determinación administrativa, el tribunal analizará si conforme al expediente administrativo: 1) el remedio concedido fue razonable; 2) las determinaciones de hechos están razonablemente sostenidas por la prueba; y 3) las conclusiones de derecho del organismo administrativo son correctas. PRT.Co. v. J. Reg. Tel. de PR, 151 DPR 269 (2000); Mun. de San Juan v. JCA, supra; Misión Ind. PR v. JP y AAA, 142 DPR 656 (1997). Véase, Demetrio Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 2da. Ed., Bogotá, Forum, 2001, págs. 533-536.
En cuanto a la revisión de las determinaciones de hechos de la agencia, la facultad revisora del foro judicial está limitada por la sección 4.5 de la LPAU, 3 LPRA see. 2175. Dicha sección, establece que “[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.” Véase, Rebollo v. Yiyi Motors, 161 DPR 69 (2004); Asoc. Vec. H. San Jorge v. U. Med. Corp., 150 DPR 70 (2000); Domínguez v. Caguas Expressway Motors, Inc., 148 DPR 387 (1999). El expediente administrativo constituirá la base exclusiva para la decisión de la agencia y para la revisión judicial de ésta. Comisionado v. Prime Life, 162 DPR 334 (2004); Torres v. Junta Ingenieros, 161 DPR 696 (2004).
No obstante, el que los tribunales den un alto grado de deferencia a los dictámenes de las agencias no significa una abdicación de la función revisora del foro judicial. Rivera Concepción v. ARPE, supra; Del Rey v. JACL, 107 DPR 348 (1978). Por el contrario, los tribunales tienen el deber de proteger a los ciudadanos contra posibles actuaciones ultra vires, inconstitucionales o arbitrarias de las agencias. Las determinaciones de los foros administrativos no gozan de deferencia cuando éstos actúan de manera arbitraria, ilegal, irrazonable o ante la ausencia de prueba adecuada o cuando la agencia cometió error manifiesto en la apreciación de la misma. Comisionado v. Prime Life, supra; Torres v. Junta Ingenieros, supra; OEG v. Rodríguez, 159 DPR 98 (2003).
Ahora bien, según lo dispone la mencionada Sección 4.5 de la LPAU, “[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal. ” El razonamiento detrás de esta disposición, es que los tribunales gozan de peritaje en cuanto a las cuestiones jurídicas por lo cual no se adelanta ningún fin público dándole deferencia a la agencia en cuanto a este aspecto. San Antonio Maritime v. PR Cement Co., 153 DPR 374 (2001); Miranda v. CEE, 141 DPR 775 (1996).
Sin embargo, lo anterior no quiere decir que los tribunales deben descartar livianamente las conclusiones de derecho hechas por las agencias administrativas. La jurisprudencia interpretativa del Tribunal Supremo tiende a señalar que los tribunales deben dar gran peso y deferencia a las aplicaciones e interpretaciones que hagan las agencias con respecto a las leyes y reglamentos que éstas administran. Ello, debido a que por tratarse de áreas del derecho que manejan a diario, las agencias desarrollan un conocimiento especializado al respecto que no debe ser menospreciado. Asoc. Vec. H. San Jorge v. U. Med. Corp, supra; Rivera Rentas v. A & C Development, 144 DPR 450 (1997).
El criterio de revisión en cuanto a las interpretaciones legales hechas sobre los estatutos que maneja la agencia debe ser también uno de razonabilidad. Aún así, la deferencia que merecen estas interpretaciones legales, cede ante una actuación irrazonable o ilegal que justifique que el tribunal ejerza su función revisora en protección de la ciudadanía. Pacheco v. Estancias, supra; Adorno Quiles v. Hernández, 126 DPR 191 (1990).
No obstante, en cuanto a las conclusiones de derecho que no envuelven interpretaciones de las leyes y reglamentos que administra la agencia cuya decisión es impugnada ni dentro del área de especialidad de ésta, las mismas son revisables por los tribunales sin limitaciones. Misión Ind. PR v. JP, supra; Rivera Rentas v. A & C Development, supra.
*597 Ill
Los recursos de los recurrentes, señor Rodríguez Marxuach, señora Sánchez Vda. de Pavía y señor Eboli Martínez, presentan señalamientos de error similares en los que cuestionan principalmente las actuaciones de ARPE al celebrar la vista y al aplicar el Reglamento de Ordenación Territorial del Municipio de San Juan. Por su parte, los recurrentes, señora Chaar Dávila y DAC cuestionaron la aplicación de un reglamento que alegan es nulo por diversas razones. Discutiremos en conjunto los planteamientos de los recurrentes, señor Rodríguez Marxuach, señora Sánchez Vda. de Pavía y señor Eboli Martínez. Luego consideraremos los argumentos de los recurrentes, señora Chaar Dávila y DAC.
Los recurrentes, señor Rodríguez Marxuach señora Sánchez Vda. de Pavía y señor Eboli Martínez, plantean en sus respectivos recursos que ARPE incidió al imponerle el peso de la prueba a los recurrentes, quienes eran interventores que se oponían a la construcción del edificio, al aplicar el Reglamento de Ordenación y al no considerar que el proyecto requería variaciones. El señor Rodríguez Marxuach añadió que ARPE había errado al aplicar el distrito sobrepuesto RD-2 al solar en controversia.
Atendamos primero el planteamiento sobre el peso de la prueba en la vista. Ésta fue realizada por ARPE durante los días 1 y 20 de marzo y 18 de abril de 2007, y se llevó a cabo en razón de una sentencia de este tribunal que ordenó su celebración. Originalmente, ARPE había concedido el permiso sin permitir la intervención de los recurrentes y sin celebrar vista alguna. Había determinado que se cumplía con los requisitos expuestos en la sección 10.04b del Reglamento de Ordenación para la aplicación del distrito RD-2. Inconforme con tal determinación, el recurrente, señor Rodríguez Marxuach, presentó varios recursos ante este tribunal en los que cuestionó la actuación de la agencia al no responder a su solicitud de intervención y al aplicar el distrito RD-2 sin haber celebrado una vista.
En la sentencia emitida por este tribunal el 10 de marzo de 2006, en los casos consolidados KLRA-2005-00532 y KLRA-2005-00603, el tribunal autorizó la intervención y resolvió que:
“Si bien el Plan de Ordenación Territorial está vigente y es de aplicación al terreno que motiva esta controversia, la determinación de si procede o no sobreponer el Distrito RD-2 a dicho predio debe ser el resultado de la evaluación de los criterios que el propio plan dispuso, por lo que la determinación que en su día se tome deberá ser el resultado de la evaluación de éstos. De ahí que la ARPE, al celebrar vista evidenciaría con la intervención del recurrente, deberá recibir prueba sobre la aplicabilidad del Distrito de Redesarrollo RD-2 y adjudicar la controversia planteada. ” Pág. 23 (Énfasis suplido).
ARPE celebró las vistas ordenadas los días 1 y 18 de marzo y 20 de abril de 2007. En la vista administrativa llevada a cabo ante ARPE el 1 de marzo de 2007, el Oficial Examinador que presidió dicha vista, el Licenciado Miguel Mihaljevich, [5] (licenciado Mihaljevich), dio oportunidad a todas las partes presentes a expresarse sobre el propósito de la vista a tenor de la sentencia de este tribunal. Luego de escuchar los argumentos de cada uno, indicó que “la posición mía'... es que el tribunal envió aquí este caso para que nosotros pasáramos juicio sobre la situación del RD-2... Dado que este es un procedimiento semi-híbrido para efectos nuestros también, los opositores van a empezar con el peso de la prueba”. Transcripción de la vista del 1 de marzo de 2007, págs. 44-45 (Apéndice del señor Rodríguez Marxuach, págs. TA 543-544).
Así las cosas, y luego de que los recurrentes presentaron las debidas objeciones a que se les impusiera el peso de la prueba, comenzó con el testimonio del Ingeniero Ramón Maíz del Toro, perito presentado por el señor Rodríguez Marxuach. Éste declaró que el proyecto no cumplía con los usos permitidos en el distrito RT-3, excepto que hubiese un distrito RD-2 sobrepuesto, y en este caso no se cumplían los requisitos para poder aplicarle el RD-2 al predio en controversia. Luego de terminar con el testimonio del Ingeniero Maíz, el señor Rodríguez Marxuach presentó el testimonio de la Arquitecta, Lina Dueño, quien también declaró que no se cumplían los criterios de la sección 10.04b del Reglamento de Ordenación, por lo que no procedía la aplicación *598 del RD-2. Finalmente presentó el testimonio del geólogo, señor Héctor Rivera Mercado, quien declaró sobre cómo se recopiló la información utilizada para llevar a cabo los estudios del área. La recurrida no presentó prueba alguna, sino que se limitó a contrainterrogar los testigos de los recurrentes.
De la sentencia emitida por este tribunal el 10 de marzo de 2006 se desprende que se ordenó a ARPE a celebrar la vista evidenciaría para que el Oficial Examinador pudiera recibir prueba sobre la aplicabilidad del distrito RD-2. Esa sentencia constituye la ley del caso, doctrina que nuestro Tribunal Supremo ha incorporado a nuestro sistema jurídico. Esta doctrina procura dar certidumbre y estabilidad a los procesos judiciales. Conforme a ésta, el Tribunal Supremo ha expresado que, de ordinario, los planteamientos que han sido objeto de adjudicación tanto por el foro de instancia como por el foro apelativo no pueden reexaminarse, ya que éstos gozan de las características de finalidad y firmeza. Mgmt. Adm. Servs., Corp. v. ELA, 152 DPR 599 (2000); Vélez Miranda v. Servicios Legales de Puerto Rico, 144 DPR 633 (1998); Sánchez Rodríguez v. López Jiménez, 118 DPR 701, 704 (1987).
Asimismo, el mencionado Alto Foro ha indicado que “el mandato es el medio oficial del que nos valemos [los tribunales revisores] para comunicar al tribunal de instancia la disposición que hemos hecho de la sentencia objeto de revisión y de ordenarle el cumplimiento con los términos de nuestra actuación. Una vez recibido el mandato el tribunal inferior debe limitarse a dar cumplimiento a lo ordenado, que constituye la ley del caso entre las partes. ” Pueblo v. Tribunal de Distrito de PR, 97 DPR 241 (1969).
Se ha dicho que lo “deseable es que las controversias sometidas, Litigadas y decididas ante el tribunal a quo sean respetadas por el mismo tribunal en etapas subsiguientes del mismo caso. Del mismo modo, es igualmente deseable que las controversias sometidas, litigadas y decididas por un tribunal apelativo dentro de una causa, sean respetadas como finales por el tribunal a quo. ” Hiram Sánchez Martínez, Práctica Jurídica de Puerto Rico; Derecho Procesal Apelativo, Lexis-Nexis of Puerto Rico, Inc. Ed. 2001, pág. 629.
Así, este tribunal evaluó en sus méritos la controversia presentada ante sí sobre la intervención del señor Rodríguez Marxuach y sobre la necesidad de evaluar los criterios dispuestos en la sección 10.04b para determinar si aplican al solar en controversia. Esta determinación se convirtió en la lev del caso y ARPE tenía v tiene la obligación inescapable de cumplirla.
Ciertamente, ARPE cumplió con el mandato de permitir la intervención del señor Rodríguez Marxuach y de otros que también la solicitaron. De igual manera cumplió con la orden de celebrar la vista. Sin embargo, el procedimiento de la vista, según establecido por el licenciado Mihaljevich, desvirtuó la orden previa de este tribunal al equivocadamente imponer ARPE el peso de la prueba a los recurrentes. ARPE no recibió prueba alguna sobre la aplicabilidad del RD-2 a la luz de los criterios expuestos en la sección 10.04b. La única prueba desfilada fue a los efectos de negar la aplicación del RD-2.
El imponer a los recurrentes el peso de la prueba tuvo el efecto de aplicar una presunción inexistente a favor de la procedencia del distrito RD-2 y obligar a los opositores a rebatirla. La sección 10.04b del Reglamento claramente establece que dicho distrito aplica cuando se cumpla con los criterios allí expuestos. Su redacción no implica que el RD-2 es de aplicación absoluta, a menos que se demuestre que no se cumplen tales criterios.
A pesar de que él Administrador Auxiliar de ARPE, (licenciado Mihaljevich) que presidió parte de la vista había anunciado que los opositores tendrían el peso de la prueba, los proponentes tampoco presentaron ninguna prueba a favor de su planteamiento sobre la aplicabilidad del RD-2. Se limitaron a contrainterrogar e impugnar la prueba presentada por los recurrentes. Así, ARPE no recibió ninguna prueba sobre la aplicabilidad de los criterios expuestos en la sección 10.04b, según ordenó la sentencia que este tribunal emitió el 10 de marzo de 2006. La orden emitida por el tribunal en dicha sentencia constituía la ley del caso *599 en la presente controversia, y la agencia tenía la obligación de cumplir con lo allí dispuesto. Sin embargo, no lo hizo.
Según la sentencia emitida por este tribunal en los casos consolidados KLRA-2005-00532 y KLRA-2005-00603, “la determinación de si procede o no sobreponer el Distrito RD-2 a dicho predio debe ser el resultado de la evaluación de los criterios que el propio plan dispuso, por lo que la determinación que en su día se tome deberá ser el resultado de la evaluación de éstos. ” Pag. 23. En consecuencia, concluimos que ARPE no evaluó los criterios, sino que se limitó a evaluar la oposición a dichos criterios, incumpliendo así -repetimos- con la sentencia de este tribunal del 10 de marzo de 2006.
Por lo tanto, tienen razón los recurrentes en su planteamiento de que erró ARPE al invertir el peso de la prueba en la vista celebrada. Ciertamente, ARPE tenía que recibir prueba sobre la aplicabilidad del distrito RD-2 por ser éste un distrito especial que tiene que cumplir ciertos criterios. Quien solicita la aplicación del RD-2 es quien tiene el peso de la prueba, no el que se oponga. Como bien indican las reglas de evidencia, “el peso de la prueba recae sobre la parte que resultaría vencida de no presentarse evidencia por ninguna de las partes”. 32 LPRA Ap. II, R. 10(a). [6] Si ninguna de las dos partes en este caso hubiese presentado prueba, ARPE no podría aplicar el distrito RD-2 como solicita la recurrida, puesto que no recibiría prueba alguna sobre la aplicabilidad de dicho distrito. Por lo tanto, el peso de la prueba recae sobre la recurrida, no sobre los recurrentes. ARPE deberá celebrar una nueva vista en la que sea Villa Doncella quien presente evidencia de que se cumplen los siete (7) criterios que requiere la sección 10.04b del Reglamento de Ordenación para que se aplique el RD-2 al predio donde se quiere construir el Condominio Dalí.
Por estos fundamentos, no estamos en posición de evaluar el planteamiento del señor Rodríguez Marxuach en el que alega que ARPE erró al determinar que procedía la aplicación del distrito RD-2 a pesar de la prueba pericial en contrario. Para ello, es necesario que ARPE emita una determinación basada en la evidencia que deberá presentar la recurrida.
Los recurrentes también alegan que ARPE erró al aplicar el Reglamento de Ordenación a la presente controversia. Este asunto también fue atendido por la sentencia emitida por este tribunal el 10 de marzo de 2006:
Resolvemos, asimismo, que si bien el Plan de Ordenación Territorial está vigente y es de aplicación al terreno que motiva esta controversia, la determinación de si procede o no sobreponer el Distrito RD-2 a dicho predio debe ser el resultado de la evaluación de los criterios que el propio plan dispuso, por lo que la determinación que en su día se tome deberá ser el resultado de la evaluación de éstos. Págs. 22-23 (Énfasis suplido).
Sin embargo, el señor Rodríguez Marxuach alega que el caso de Asociación de Vecinos Punta Las Marías v. ARPE, 2007 JTS 30; 170 DPR_(2007), resolvió que el Plan de Ordenación Territorial del Municipio de San Juan no aplica al sector Punta Las Marías. No tiene razón en su planteamiento. En ese caso, que resuelve una controversia sobre cuál es el foro con jurisdicción para revisar cierta determinación de ARPE, el Tribunal Supremo lo que hace es reiterar que el sector Punta Las Marías está cobijado por las disposiciones de los reglamentos de la Junta de Planificación sobre las zonas de interés turístico. Nada expresa el Tribunal sobre los Planes y Reglamentos de Ordenación Territorial del municipio y su aplicabilidad al sector porque no había controversia alguna sobre la reglamentación aplicable.
Según discutimos anteriormente, la Ley de Municipios Autónomos, supra, dispone que una vez el municipio apruebe un plan de ordenación territorial, éste regirá todas las decisiones sobre el uso del suelo. El Municipio de San Juan aprobó su Plan y Reglamento de Ordenación Territorial, el cual entró en vigor el 13 de marzo de 2003. Su sección 1.06 indica que “las disposiciones contenidas en este Reglamento aplicarán a toda lotificación, urbanización, construcción o desarrollo dentro del ámbito territorial bajo la jurisdicción del Municipio de San *600 Juan”. Por lo tanto, no erró ARPE al aplicar el Reglamento de Ordenación de San Juan a la controversia ante sí.
Los recurrentes también alegaron que ARPE había errado al resolver que aplicaba el distrito RD-2 sin considerar que el proyecto requería variaciones. La sección 16.01a del Reglamento de Ordenación dispone que:

“La Junta, la ARPE o el Municipio, según corresponda por la radicación y etapa del caso, podrán autorizar variaciones en los requisitos de este Reglamento conforme se indica en esta Sección. El propósito de las variaciones será evitar que la aplicación literal de los requerimientos de este Reglamento resulte en una confiscación del disfrute de la propiedad. Toda variación deberá ser solicitada por el dueño de la propiedad para la cual se solicita la misma, o su representante autorizado, utilizando el formulario que se designe para tales propósitos señalando motivos, fundamentos y razones en apoyo de su solicitud. ”

Según establece esta sección, ARPE tiene la facultad de conceder variaciones a petición del dueño de la propiedad. En este caso, los recurrentes alegan que para que el proyecto se pudiera aprobar, era necesario que la recurrida solicitara variaciones, lo que no había hecho.
Ya resolvimos que ARPE erró al determinar que aplicaba el distrito RD-2 luego de haber celebrado una vista que no cumplió con lo ordenado a la agencia en la sentencia emitida por este tribunal el 10 de marzo de 2006 (casos consolidados KLRA-2005-00532 y KLRA-2005-00603). Más aún, en dicha vista no se presentó prueba alguna sobre la aplicabilidad del referido distrito (RD-2). En la nueva vista, la parte recurrida tendrá que demostrar y probar la aplicabilidad del distrito RD-2 en el solar objeto de controversia. En vista de ello, erró ARPE -repetimos- al emitir la resolución recurrida y al requerirle a los recurrentes el presentar prueba sobre la inaplicabilidad del distrito RD-2 al sector Punta Las Marías. Además ordenamos a ARPE el resolver, luego de celebrada la nueva vista, si para la aprobación del proyecto de referencia se requieren variaciones que no han sido solicitadas por la recurrida Villa Doncella. De entender ARPE que se requieren variaciones que el desarrollador del proyecto no ha solicitado, tomará la determinación correspondiente. [7] Por lo tanto, no estamos en este momento en posición de resolver el error alegado sobre las variaciones.
En cuanto a los errores planteados por los recurrentes, señora Chaar Dávila y DAC, éstos exponen varias razones por las cuales alegan que el Reglamento de Ordenación es nulo. Alegan que el proceso de aprobación del Reglamento de Ordenación incumplió con las disposiciones de la Ley de Política Pública Ambiental, supra, la Ley de Municipios Autónomos, supra, y la LPAU, supra.
De entrada, debemos examinar la aplicabilidad de las disposiciones de la LPAU a los gobiernos municipales. La LPAU se centra en aquellos organismos que controlan y regulan las operaciones administrativas del gobierno. Se refiere a las llamadas agencias administrativas que son parte de la rama ejecutiva del gobierno. Demetrio Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, segunda edición, pág. 9. La sección 1.3 de la LPAU define de forma amplia lo que constituye una agencia y, acto seguido, excluye las entidades que no están sujetas a sus disposiciones. En ese listado se encuentran los gobiernos municipales o sus entidades o corporaciones. 3 LPRA § 2102. Así pues, la propia LPAU exime a los municipios de cumplir con sus requisitos y procedimientos. Por tanto, de existir una obligación por parte de los municipios de observar el procedimiento de reglamentación dispuesto en la LPAU, tiene que surgir de otra disposición legal. Véase Rivera Santiago v. Municipio de Ceiba, 170 DPR _ (2007), 2007 JTS 85. En Asoc. Vecinos de Altamesa Este v. Municipio de San Juan, el Tribunal sostuvo que, a manera de excepción, la Ley de Municipios Autónomos disponía que cierta reglamentación debía adoptarse de conformidad con la LPAU, supra, por lo que las disposiciones de la LPAU sobre el proceso de reglamentación podían aplicar a acciones del municipio. 140 DPR 24, 33 n. 10 (1996).
Según se discutió anteriormente, la Ley de Municipios Autónomos, supra, confiere a los municipios la *601 facultad de adoptar planes de ordenación territorial. A estos efectos, el artículo 13.008 dispone que:
“La elaboración o revisión de Planes de Ordenación se desarrollará en etapas y a través de la preparación secuencial o concurrente de una serie de documentos. La misma seguirá un proceso intenso de participación ciudadana mediante vistas públicas de acuerdo a lo dispuesto en este Capítulo. Se cumplirá además, con lo establecido en la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico. 21 LPRA see. 4606. ”
De igual manera, el Artículo 1.02 del Reglamento de Ordenación indica que:

“Este Reglamento se adopta al amparo y en armonía con las disposiciones de las Leyes Números 75 y 76 del 24 de junio de 1975, según enmendadas, conocidas respectivamente como Ley Orgánica de la Junta de Planificación y Ley Orgánica de la ARPE; de la Ley Número 170 de 12 de agosto de 1988, según enmendada, conocida como Ley de Procedimiento Administrativo Uniforme; y de la Ley Número 81 de 30 de agosto de 1991, según enmendada, conocida como Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico. ”

De estas disposiciones, y de las expresiones hechas por el Tribunal Supremo en la jurisprudencia antes citada, podemos colegir que en cuanto a la adopción del Reglamento de Ordenación Territorial del Municipio de San Juan, aplican las disposiciones de la LPAU sobre el proceso de reglamentación.
Por su parte, la sección 2.7 de la LPAU dispone que:

“(a) Una regla o reglamento aprobado después de la fecha de efectividad de este Capítulo será nulo si no cumpliera sustancialmente con las disposiciones de este Capítulo.

(b) Cualquier acción para impugnar la validez de su faz de una regla o reglamento por el incumplimiento de las disposiciones de esta Ley deberá iniciarse en el Tribunal de Apelaciones dentro de los treinta (30) días siguientes a la fecha de vigencia de dicha regla o reglamento. La competencia sobre la acción corresponderá a la región judicial donde esté ubicado el domicilio del recurrente. ”

El Tribunal Supremo ha expresado además que:
“Cualquier persona puede impugnar la validez de una regla o reglamento aprobado por una agencia administrativa por el incumplimiento de las disposiciones de la LPAU, supra, dentro del término de treinta (30) días, haya participado o no durante la celebración de las vistas públicas celebradas, como parte del proceso para su aprobación. No tiene que ser afectado por la aplicación de dicha regla o reglamento para tener la capacidad para promover la referida impugnación ante el Tribunal de Apelaciones. No obstante, cualquier persona afectada por la aplicación de una regla o reglamento aprobado por. una agencia administrativa podrá impugnar la validez constitucional del mismo, en cualquier momento, ante el Tribunal de Primera Instancia. ” JP v. Frente Unido I, 165 DPR _ (2005), 2005 JTS 122. Véase además, Centro Unido de Detallistas v. Comisión, 174 DPR _ (2008), 2008 JTS 137.
Ante estas disposiciones, carecemos de jurisdicción para atender el planteamiento de nulidad del reglamento de los recurrentes, señora Chaar Dávila y DAC. Según las disposiciones de la LPAU, para que pudiéramos atender tales alegaciones de nulidad, los recurrentes debieron haber comparecido ante este foro dentro de los treinta (30) días siguientes a la vigencia del Reglamento de Ordenación. Este entro en vigor el 13 de marzo de 2003, y no es hasta el 2007 que los recurrentes acuden ante nos. No obstante, la jurisprudencia reconoce que una persona afectada por la aplicación de un reglamento podrá impugnar su validez en cualquier momento ante el Tribunal de Primera Instancia. Este tribunal no es el foro con jurisdicción para atender tal controversia. Por tal motivo, nos vemos obligados a desestimar dicho extremo del recurso presentado por falta de jurisdicción.
*602 IV
Por los fundamentos expuestos, los cuales hacemos formar parte de esta sentencia, resolvemos lo siguiente: (1) revocamos la resolución emitida por ARPE el 13 de agosto de 2007 y ordenamos la celebración de una nueva vista administrativa dentro de los próximos cuarenta y cinco (45) días en la que sea la parte recurrida quien presente prueba sobre la aplicabilidad del distrito RD-2 al predio en controversia; (2) desestimamos por falta de jurisdicción el planteamiento de nulidad del Reglamento de Ordenación Territorial del Municipio de San Juan formulado por los recurrentes, señora Chaar Dávila y DAC; y (3) confirmamos la determinación de ARPE de aplicar a la presente controversia el Reglamento de Ordenación Territorial del Municipio de San Juan, adoptado por la Junta de Planificación de Puerto Rico el 9 de octubre de 2002 (JP-PT-18-1), aprobado el 13 de marzo de 2003 por la entonces Gobernadora de Puerto Rico.
Así lo acordó y manda este Tribunal y lo cerifica la Secretaria del Tribunal de Apelaciones.
María Elena Pérez Ortiz Secretaria del Tribunal de Apelaciones
ESCOLIOS 2009 DTA 2

1. Los otros recurrentes no presentaron prueba propia, sino que se allanaron a la prueba presentada por el señor Rodríguez Marxuach.

2. Ley Núm. 9 de 18 de junio de 1970, según enmendada, 12 LPRA sees. 1121 a 1140a. Esta ley fue derogada por la Ley Núm. 416 del 22 de septiembre de 2004, 12 LPRA sees. 8001 a 8007f.

3. Ley Núm. 81 del 30 de agosto de 1991, según enmendada, 21 LPRA sees. 4001 a 4958.

4. Ley Núm. 170 del 12 de agosto de 1988, según enmendada, 3 LPRA see. 2101 a2201.

5. El licenciado Mihaljevich fungía como Administrador Auxiliar de ARPE al momento de la vista. En la primera vista el 1 de marzo de 2007, éste indicó que estaría presidiendo dicha sesión y estaba acompañado por los licenciados, Alma Acevedo Ojeda y Félix Rivera. Expresó que la licenciada Acevedo sería la Oficial Examinadora de los procedimientos posteriores. Véase transcripción de la vista del 1 de marzo de 2007, págs. 1-2 (Apéndice del señor Rodríguez Marxuach, págs. TA 500-501). Posteriormente, el licenciado Mihaljevich abandonó la vista y permaneció la licenciada Acevedo Ojeda como Oficial Examinadora.

6. Reconocemos que la LPAU dispone que las Reglas de Evidencia “no serán aplicables a las vistas administrativas, pero los principios fundamentales de evidencia se podrán utilizar para lograr una solución rápida, justa y económica del procedimiento". 3 LPRA 2163.

7. Véase Hatillo Cash & Carry v. ARPE, donde el Tribunal Supremo expresó, en el contexto de una consulta de ubicación, que “cuando se manifiesten cambios significativos en el proyecto propuesto ... hay que someterlo a una nueva evaluación” y aclaró mediante nota al calce que estaba aplicando el criterio de las variaciones a las consultas de ubicación. 174 DPR_ (2008), 2008 JTS 117, nota al calce 7.